*A. C. Saffold,* contra.

---

### 2927, 2928. MILLER *v.* CARAKER.

### 2929. CHEEVERS *v.* CARAKER.

### 2930. KINCHEN *v.* CARAKER.

### 2931. GARDNER *v.* CARAKER.

1. There was no error in overruling the special demurrer to the mortgage foreclosure.
2. A signed statement of facts, purporting to be the statement of the signer, followed by the certificate of an officer authorized to administer oaths that it was sworn to and subscribed before him, is a lawful affidavit. It is not necessary that it should be stated in the instrument, prior to the signature of the affiant, that the declaration was made under oath, if in fact the oath was administered. Whether the oath was or was not administered is a matter as to which the certificate of the officer is prima facie evidence, but as to which parol evidence is admissible.

DECIDED APRIL 24, 1911.

Foreclosure of mortgages; from city court of Sylvester—Judge Williamson. August 22, 1910.

*Claude Payton, C. E. Hay,* for plaintiffs in error.

*R. J. Bacon, W. E. Grubbs,* contra.

POWELL, J. Caraker foreclosed a number of chattel mortgages against different defendants, and from these cases the present writs of error arise. They are separate cases, but they all involve identically the same points. In each case there was a demurrer to the foreclosure, because of the inadequacy of the description of the mortgaged property. The court overruled the demurrers. We may say, without going into details, that in each case the description of the mortgaged property was sufficient, at least as between the parties to the instrument.

In each of the cases the defendant resisted the foreclosure by filing the defense of non est factum. This defense was presented in a writing in the following form: The case is duly stated. Then comes the statement that the defendant, without waiving his de-

murrer, "enters a plea of non est factum, and says that the mortgage sought to be foreclosed in the above-stated. case was never executed by the defendant, nor by any person authorized by the defendant, and the same is not the act of this defendant, nor has same been in any way ratified by this defendant." The plea concludes in the usual form, demanding jury trial, is signed by the defendant, and is followed by a jurat as follows: "Sworn to and subscribed before me this January 10, 1910. J. W. Warren, C. S. C." The court struck this defense, on the ground that it was not verified by the affidavit of the defendant.

It is to be understood, of course, that a defense to the foreclosure of a mortgage on personalty is, in this State, to be made on affidavit of the defendant, and in all cases it is necessary that a plea of non est factum should be sworn to. The question is whether this plea, signed by the defendant and followed by the jurat of the clerk of the superior court, certifying that it has been sworn to, constitutes a lawful affidavit. The controlling point, therefore, is whether the failure to state in the body of the affidavit that it is made under oath or is sworn to is a fatal lack; and we use the words "fatal lack" intentionally, for the defendant in each case offered to prove by parol that the oath as to the truthfulness of the contents of the plea was administered before the plea was signed and attested by the officer.

According to the very general consensus of authority an affidavit is "a statement or declaration reduced to writing and sworn to or affirmed before some officer who has authority to administer an oath," or, as it is sometimes stated, "is simply a declaration on oath, in writing, sworn to by a party before some person who has authority under the law to administer oaths." See Words and Phrases, vol. 1, p. 240. In many jurisdictions it is held that the signature of the affiant is not an essential; but in this State the contrary rule has been adopted. See *Meadows* v. *Alexander, 1 Ga. App.* 40 (57 S. E. 901), and cases there cited. So that, to give a definition of an affidavit according to the law as in force in this State, we may say that it is a statement or declaration reduced to writing, sworn to or affirmed before some officer who has authority to administer the oath, and duly signed by the affiant. It has been held in a number of cases that the jurat is not, strictly speaking, a part of the affidavit, but is merely a certificate by which

the fact that the affidavit was sworn to is prima facie proved. If the officer fails to sign it originally, he may sign it afterward. Further, "it is not indispensable that the jurat should be signed by the officer who administered the oath, the material question being whether or not the oath was actually administered and taken; and in the absence of the officer's certificate to this effect, aliunde testimony may be received to establish this material fact." *Beach* v. *Averett,* 106 *Ga.* 73 (31 S. E. 806, 71 Am. St. Rep. 239); *Smith* v. *Walker,* 93 *Ga.* 252 (18 S. E. 830); *Veal* v. *Perkerson, 47 Ga.* 92.

We understand that the chief distinction recognized by the courts as to jurat and affidavit is this: that nothing to which the officer alone certifies is to be regarded as a part of the affidavit, considering the affidavit in a substantive sense, and as being what the affiant in fact swore to; and, on the other hand, that the certificate of the officer is sufficient prima facie evidence to establish the fact that the contents of the writing to which it is attached were sworn to. Under the practice in the British courts, great strictness was formerly required as to the forms of affidavits, and any departure from the prescribed form would vitiate the affidavit. But none of the American courts, so far as our investigation goes, has ever given any great weight to mere form in these matters, and it is well recognized in this State that no particular form is required, provided the facts sworn to are committed to writing and signed by the affiant, if, as a matter of fact, the oath was administered. Now, on account of the requirement in England that in the body of the affidavit itself the words "upon oath," or "being sworn," should be used, it has been held in a number of English cases that the omission of these words is fatal, even though the jurat attests the fact that the statements of the affidavit were made under oath or were sworn to. This strictness of the British courts was noticed and commented on in the case of *Veal* v. *Perkerson,* supra, and the fact was also stated in that case that such formality was not observed in Georgia.

It may be safely said that if one should have before him all of the affidavits which have ever been made in connection with judicial proceedings in this State, from its organization down to the present time, he would hardly find in 10 per cent. of them the statement of the affiant himself that he was sworn or that he was under oath; for, while affidavits occasionally begin, "I, the affiant, do swear,"

or, "I, the affiant, on oath, do say," still the most common form of introducing an affidavit is, "Personally appeared before me, the undersigned, an officer authorized to administer oaths, the affiant [naming him], who, on oath [or, who being duly sworn], deposes and says." It will be noticed that in this form which is commonly used, the statement that the affiant was duly sworn is not the statement of the affiant, but on its face purports to be the statement of the attesting officer. It is substance, not mere form, that is to be observed. The affidavit is therefore good, provided (1) that there is a written statement; (2) that the oath is administered to the affiant; and (3) that he signs the statement. The verification of the magistrate to the fact that the oath was administered may as completely appear from the jurat as from the mere introductory clause preceding the written statement of the facts sworn to.

Almost the identical point was before the Supreme Court in *Loeb* v. *Smith,* 78 *Ga.* 504 (3 S. E. 458). There the body of the paper which was signed by the affiant contained no statement that it was on oath or sworn to, and the fact of its being made under oath appeared only from the jurat of the notary who attested it; but Chief Justice Bleckley said: "We think the fair construction of the whole document, taken together, is that the agent [the affiant], swore to the truth of the petition. By the terms 'sworn to,' as used in the jurat, the magistrate meant to say, and did say with sufficient certainty, that the petition was sworn to; and to swear to an instrument of writing, such as a petition, is to declare on oath that its contents are true." Chief Justice Bleckley did, in the course of the argument, suggest that this might not amount to a formal affidavit, though it is plain, from all he said, that he leaned most strongly to the opinion that it did. In that case it was held that a formal affidavit was not necessary.

In the present case, where a formal affidavit is necessary, we hold that the writing before us constitutes an affidavit which is sufficiently formal, thus giving effect to what the learned Justice intimated, but was not called upon to decide judicially.

*Judgment reversed.*