MITCHELL et al., Town Board of Trustees, v. NATIONAL SURETY CO.

(District Court, D. New Mexico. May 2, 1913.)

No. 223.

**1. CORPORATIONS (§ 672\*)—ACTION AGAINST SURETY COMPANY—COMPLAINT—CONSTRUCTION.**

A complaint against a foreign surety company, alleging that defendant was incorporated under the laws of New York, and by virtue of compliance with the laws of New Mexico was at all times mentioned in the complaint duly authorized to transact business in New Mexico, sufficiently charged that defendant had appointed the superintendent of insurance in writing to be its true and lawful attorney on whom process might be served, as required by Laws N. M. 1909, c. 48, § 4, making such appointment a prerequisite to the right of a foreign surety company to do business within the state.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2645–2649; Dec. Dig. § 672.\*]

**2. INSURANCE (§ 10\*)—INSURANCE COMMISSIONER—ABOLITION OF OFFICE—STATUTES—SERVICE ON COMMISSIONER.**

Since by Laws N. M. 1909, c. 48, numerous duties are imposed on the superintendent of insurance in connection with insurance companies or underwriters engaged in the insurance business, such office was not abolished by Const. N. M. art. 11, § 6, creating the Corporation Commission and transferring to that body exclusive power over corporations, together with all charters, papers, and documents relating thereto on file in the office of the commissioner of insurance; and hence such provision did not affect the efficacy of subsequent service on the superintendent of insurance in an action against a foreign surety company having appointed that officer as its agent on whom service might be made, as required by Laws N. M. 1909, c. 48, § 4, making such appointment a prerequisite to the transaction of business by a foreign surety company within the state, and declaring that the appointment shall remain in force so long as any liability remains outstanding against the company in the state.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 10; Dec. Dig. § 10.\*]

**3. PROCESS (§ 137\*)—SERVICE—PRIVATE PERSON—"AFFIDAVIT."**

Laws N. M. 1912, c. 56, § 1, provides that civil process may be served by the sheriff of the county where the defendant may be found, or by any person not a party to the action over 18 years of age, and, when served by a person other than the sheriff, proof thereof shall be made by affidavit. *Held* that, since an "affidavit" is defined to be a voluntary oath before some judge or officer of the court to evince the truth of certain facts, a declaration on oath in writing, sworn to by the party before some person who has authority under the law to administer oaths, an affidavit of service by a private person in the form of a certificate, to which a jurat was attached reciting that the same was subscribed and sworn to, etc., before a notary public, was not defective because it did not recite in the body that the affiant was declaring under oath.

[Ed. Note.—For other cases, see Process, Cent. Dig. §§ 177–180; Dec. Dig. § 137.\*

For other definitions, see Words and Phrases, vol. 1, pp. 240–245; vol. 8, p. 7568.]

Action by James P. Mitchell and others, constituting the Board of Trustees of the Town of Las Cruces, N. M., against the National Surety Company. On motion to set aside the service. Overruled.

Mark B. Thompson and Holt & Sutherland, all of Las Cruces, N. M., for plaintiffs.

Frank Herron, of Las Cruces, N. M., for defendant.

POPE, District Judge. [1] The complaint in the present cause alleges that the defendant "is a corporation incorporated under the laws of the state of New York, * * * and as plaintiffs are informed and believe, by virtue of compliance upon the part of said corporation with the laws of New Mexico, is, and at all times hereinafter mentioned was, duly authorized to transact business in New Mexico." This last allegation of compliance with the New Mexico law, and of authority by reason thereof to do business in the state, is tantamount to an allegation, among other things, that the defendant company has appointed in writing "the superintendent of insurance to be the true and lawful attorney of such company in and for said state, upon whom all lawful process in any action or proceedings against the company may be served with the same effect as if the company existed in this state"; for section 4 of chapter 48 of the New Mexico Laws of 1909 require such appointment as a prerequisite to the transaction of business. Such appointment presumably made also presumably contained—for the law so requires—a provision that it should continue "in force so long as any liability remains outstanding against the company in this [state]." The complaint is sufficient evidence of such outstanding liability. The record thus suffices prima facie to show a defendant corporation that has designated the superintendent of insurance as the agent upon whom process against it may be served. The process in this suit, asserting an outstanding liability, has been so served, and the defendant now attacks the service as insufficient.

[2] It is said that the service is ineffectual, because there is now no such officer as the superintendent of insurance. The contention is that this office was abolished by the creation, under article 11, § 6, of the state Constitution, of a corporation commission. It is urged that this commission is vested with exclusive power over corporations, as evidenced by the constitutional provision that "all charters, papers and documents relating to corporations on file in the office of the commissioner of insurance shall be transferred to the office of the commission." It is urged with much force that, since all papers relating to corporations are by the Constitution taken from the insurance superintendent or commissioner and turned over to the corporation commission, the latter must as to corporations be deemed to have superseded the insurance officer, since the commissioner can, of course, not conduct his office without papers, and in so far as papers are taken away from him his functions are likewise taken away. If, therefore, the duties of the insurance commissioner or superintendent relate only to corporations, there is much to support the view that the corporation commission superseded him and abolished his office.

But has he not some basis of existence in addition to his duties in connection with insurance corporations? It would so seem. By chapter 48 of the Laws of 1909 numerous duties are imposed upon the superintendent of insurance in connection with "insurance compa-

nies." The latter are defined by section 6 of this act of 1909, not only as including all corporations engaged in insurance, but "all * * * associations, partnerships or individuals engaged as principals in the insurance business, excepting fraternal and benevolent orders and societies." It is within judicial notice that, while the writing of insurance is done principally by corporations, it is not confined to such, but that to some extent it is handled by individuals or legal entities not possessed of corporate powers. Even if it be true that insurance business in New Mexico is at present done solely by corporations, this does not detract from the fact that it may in the future to some extent be done by others, and indeed the Legislature has so contemplated by its definition of insurance companies subject to the insurance commissioner, above quoted.

As to insurers other than corporations, the functions of the superintendent of insurance are left intact by the constitutional provision creating the corporation commission, so that, while the greater part of his duties have been transferred, there is enough left of the office to justify the view that the old territorial law creating it remains in force under article 22, § 4, of the Constitution "until altered or repealed." This seems to be the view entertained by the legislative department, for there have been since the organization of the state appropriations for the office of insurance superintendent and for his clerical force. The executive department has likewise adopted this view, for the Governor of New Mexico at the recent session of the Legislature made an appointment to this office. In cases of doubt the construction of laws by the state authorities charged with their execution are well recognized sources of light.

It seems immaterial to the present question that the defendant in this case is a corporation. The question is not whether the superintendent of insurance is still charged with administration of matters connected with a corporation, but whether the corporation's power of attorney, given as a result of statute, designating the superintendent of insurance as an official upon whom service may be made, still is an existing officer upon whom service may be made pursuant to the power of attorney. For reasons above given, we think that the insurance commissioner still exists, and that the service made upon him is, in view of the allegations of the complaint, prima facie a proper service.

[3] What has been said above disposes of grounds 2, 3, and 5 of the motion to quash the return of service. Ground 4 having been abandoned, it only remains to consider ground 1, which is directed to the question of whether the return sufficiently shows service upon the insurance superintendent by section 1 of chapter 56 of the New Mexico Laws of 1912.

It is there provided that in civil cases summons "may be served by the sheriff of the county where the defendant may be found, or by any person not a party to the action, over the age of eighteen years." It is further provided that, when served by a person other than the sheriff, "proof thereof shall be made by affidavit." It is contended that the return here made is not an affidavit, and thus not sufficient to prove service. The indorsement or return is as follows:

"State of New Mexico, County of Santa Fé—ss.:

"I, Edwin F. Coard, the undersigned, do hereby certify that the within summons came to my hands on the 4th day of December, A. D. 1912, and that I executed the same at Santa Fé, Santa Fé county, N. M., on the 4th day of December, 1912, by then and there delivering a copy of same, together with a copy of the complaint in said cause, to the state superintendent of insurance; and I do further certify that I am over the age of eighteen years, that I am not a party to said cause, and not interested in the issues involved therein.

"Edwin F. Coard.

"Subscribed and sworn to before me this 4th day of December, 1912.

"Evelyn D. Castle,

"[Seal.]                     Notary Public, Santa Fé County, N. M.

"My commission expires February 16, 1916."

It is claimed that this is no affidavit, for the reason that, although the jurat shows that the statement was sworn to and subscribed by the affiant, the body thereof fails to state that the affiant is declaring under oath. It is urged that a paper is not an affidavit unless in the body thereof there is a recital that it is under oath, and that a recital in the jurat does not supply the defect. This is to be determined by the meaning of the word "affidavit." It is defined by Blackstone as:

"A voluntary oath before some judge or officer of the court, to evince the truth of certain facts." 3 Bl. Comm. 304.

It is similarly defined by numerous other writers. In Harris v. Lester, 80 Ill. 307, an affidavit is defined to be:

"A declaration on oath, in writing, sworn to by the party before some person who has authority under the law to administer oaths."

So in Bouvier, Law Dictionary, title "Affidavit," it is defined to be:

"An oath or affirmation reduced to writing, sworn or affirmed before some officer who has authority to administer it."

In 2 Cyc. 4, it is defined to be:

"A declaration on oath, reduced to writing and affirmed or sworn to by affiant before some person who has authority to administer oaths."

The definition given in 1 Bacon's Abridgment, title "Affidavit," introduces an element not found in the foregoing definitions, to wit, the signing by the affiant, for the definition there found is as follows:

"An affidavit is an oath in writing, signed by the party deposing, and sworn to before and attested by him who hath authority to administer the same."

This additional element has been declared by numerous courts as not justified by the ancient definition; these courts holding that the signature of the affiant is unnecessary. Gill v. Ward, 23 Ark. 16; Crist v. Parks, 19 Tex. 234; Lutz v. Kinney, 23 Nev. 279, 46 Pac. 257, 258.

In Patridge v. Bank, 78 N. J. Eq. 297, 81 Atl. 1134, affirming the same case in 77 N. J. Eq. 208, 77 Atl. 410, a definition embodying still another element is given in the following language:

"An affidavit is a statement in writing declared to be true by the party who makes it, and certified to have been sworn to by the officer who takes it."

It will be noted that this last definition adds an element not found in the ancient definitions, in that it requires that the affiant shall de-

clare the statement to be true. This element of the definition, however, was not an issue in the case just quoted, and no authorities are cited in support of the definition. In discussing the elements of an affidavit, it was said by the Supreme Court of North Carolina in Alford v. McCormac, 90 N. C. 151, 152:

"The essential requisites are, apart from the title in some cases, that there shall be an oath administered by an officer authorized by law to administer it, and that what the affiant states under such oath shall be reduced to writing before such officer. The signing or subscribing of the name of the affiant to the writing is not generally essential to its validity; it is not, unless some statutory regulation requires it, as is sometimes the case. It must be certified by the officer before whom the oath was taken before it can be used for legal purposes; indeed, it is not complete or operative until this is done. The certificate, usually called the jurat, is essential, not as part of the affidavit, but as official evidence that the oath was taken before a proper officer. The object of such an instrument is to obtain the sworn statement of facts in writing of the affiant in such official and authoritative shape, as that it may be used for any lawful purpose, either in or out of courts of justice. The signature of the affiant can in no sense add to or give force to what is sworn, and what is sworn is made to appear authoritatively by the certificate of the officer."

So in Lutz v. Kinney, supra, referring to the execution of an affidavit, it is said:

"He [the affiant] must make it; that is, he must swear to the facts stated, and they must be in writing. It is then his affidavit, and, as evidence that it was sworn to by the party whose oath it purports to be, it must be certified by the officer before whom it was taken, which certificate is commonly called the 'jurat' and must be signed by such officer."

It is to be noted that in none of the definitions or authorities above referred to is there found any requirement that the body of the statement shall recite that it is under oath. Of course, it is a matter inherent in the affidavit that it must be under oath; but, where that fact appears from the jurat, is not the paper complete as an affidavit? Does it not, under such circumstances, show a statement in writing, signed by the party and sworn to before a competent officer? And, showing this, is it necessary to go still further, and to recite in the body of the instrument the fact that it is under oath? The authorities upon this point are very few. It is stated as the rule in 2 Cyc. 24, that:

"The fact that affiant makes his statement on oath or affirmation should be stated in the body of the affidavit."

Only two American cases are cited to this doctrine: Kehoe v. Rounds, 69 Ill. 351, and Cosner v. Smith, 36 W. Va. 788, 15 S. E. 977. An examination of these fails to convince that they support the text. A number of English cases are there cited as being to the same effect. So far as accessible, these have been read, and are found to hold that the formal part of the affidavit should contain a recital that it is on oath, and is not remedied by such a statement in the jurat. Allen v. Taylor, L. R. 10 Eq. 52; Phillips v. Prentice, 2 Hare, 542, 24 Eng. Ch. 542, citing Oliver v. Price, 3 Dowl. P. C. 261.

It is pointed out, however, in a number of American cases, that the rule in England is largely influenced by rules of court, and for this

reason American courts have not felt, upon general principles of law, impelled to adopt the strict view prevailing in England. An illustration of this is the divergence of the American courts, above noted, from the view apparently prevailing in England that an affidavit must be signed. Crist v. Parks, supra; Gill v. Ward, supra; Veal v. Perkerson, 47 Ga. 92.

This is quite fully discussed in Miller v. Caraker, 9 Ga. App. 255, 257, 71 S. E. 9, 10, as follows:

"Under the practice in the British courts, great strictness was formerly required as to the forms of affidavits, and any departure from the prescribed form would vitiate the affidavit. But none of the American courts, so far as our investigation goes, has ever given any great weight to mere form in these matters, and it is well recognized in this state that no particular form is required, provided the facts sworn to are committed to writing and signed by the affiant, if, as a matter of fact, the oath was administered. Now, on account of the requirement in England that in the body of the affidavit itself the words 'upon oath,' or 'being sworn,' should be used, it has been held in a number of English cases that the omission of these words is fatal, even though the jurat attests the fact that the statements of the affidavit were made under oath or were sworn to."

In the last-cited case it· is held, citing Loeb v. Smith, 78 Ga. 504, 3 S. E. 458, a decision written by Chief Justice Bleckley, as follows:

"A signed statement of facts, purporting to be the statement of the signer, followed by the certificate of an officer authorized to administer oaths that it was sworn to and subscribed before him, is a lawful affidavit. It is not necessary that it should be stated in the instrument, prior to the signature of the affiant, that the declaration was made under oath, if in fact the oath was administered."

The only other American decision which has come to our notice bearing upon this point is Woods v. Pollard, 14 S. D. 44, 84 N. W. 214, 217, wherein the court, in construing a statute requiring an affidavit as a basis for service by publication, holds that a verified complaint is an affidavit within the meaning of the law. As a pleading does not ordinarily in the body thereof recite that it is under oath, but derives its character as a sworn statement solely from the jurat, it will be readily seen that this case is in point. In this state (C. L. 1897, § 2685, subsec. 24) a sworn pleading is by statute put upon the same basis as an affidavit as a foundation for constructive service. The foregoing cases illustrate, and we believe correctly state, the more liberal rule, and the prevalent one in the American courts, that evidence by the jurat of the administering of the oath is sufficient to make it a written statement under oath, and thus an affidavit, notwithstanding the affiant fails to state over his signature that he is declaring under oath. . It is true that the jurat is no part of the affidavit, in the sense that it is no part of what the affiant states; but its very function, as stated in Lutz v. Kinney, supra, is to show that the statement has been made under oath before a competent officer. Using it for that purpose, it is efficient to show that the statement was made under oath, even if the affiant fails so to recite.

United States v. McConaughy (D. C.) 33 Fed. 168, is relied upon by defendant. That, however, was a criminal case, dealing with the tech-

nical sufficiency of an indictment, and a careful reading of it fails to disclose anything contrary to what is here held.

The motion to quash the return of service will accordingly be denied, defendant to plead within 20 days.