[No. 8799.]

Ramer, Secretary of State v. Wright.

1. Legislation—*Referendum*—*Protest*—The provisions of Sec. 3, c. 97, of the Laws of 1913, that a protest to a petition for the submission of an act of the legislature to the people must specify the grounds of such protest, and be under oath, are jurisdictional. The Secretary of State is without power to act in the absence of a substantial compliance therewith. (58.)

2. ——*Oath*—*Certification.* Appended to a protest against the submission of a legislative enactment to the People appeared the certificate of a notary public that certain persons therein named, each, "deposes and says: that he subscribed the above protest after reading the same * * * and the contents thereof are true to the best of his knowledge, information and belief." There being no statement that the persons named were sworn, *held* that there was no compliance with the statute, and the Secretary had no authority to entertain the protest. Hill and Teller, J. J.'s, dissented. (56, 57.)

*Error to Denver District Court.* Hon. Charles C. Butler, Judge.

Hon. Fred Farrar, Attorney General, Mr. Francis E. Bouck, Deputy Attorney General, Mr. H. L. Ritter, Mr. Charles H. Haines and Mr. Hugh McLean, for petitioners.

Mr. I. B. Melville, Mr. M. D. Melville, Mr. Carle Whitehead, and Mr. Albert Vogl, for respondents.

Mr. Justice Scott delivered the opinion of the court.

On the 26th day of June, 1915, the respondents filed with petitioner, John E. Ramer, as Secretary of State, a petition to refer to the vote of the People of Colorado, House Bill No. 178, being an act of the Twentieth General Assembly, relating to the Practice of Medicine.

Within fifteen days thereafter, and on the 19th day of July, 1915, there was filed with the Secretary of State what purported to be a protest against said petition.

A motion to dismiss the protest was filed with and overruled by the Secretary of State. Upon the hearing, the Secretary of State sustained the protest, and held the referendum petition to be insufficient. August 9th, 1915, the respondents filed in the District Court of the City and County of Denver, their petition for a review of the proceeding before the Secretary of State.

Return was made by the Secretary of State in due time, and upon a hearing by the court, it was held that the protest to the petition to refer the act was not sufficient to meet the requirements of the statute in such case, and an order entered directing the Secretary of State to submit the bill for a referendum vote.

This action is to review the findings and judgment of the District Court.

Section 1, art. V, of the Constitution provides among other things, that;

"The text of all measures to be submitted shall be published as constitutional amendments are published, and in submitting the same and in all matters pertaining to the form of all petitions the Secretary of State and all other officers shall be guided by the general laws and the act submitting this amendment, until legislation shall be especially provided therefor.   *   *   *

The initiative and referendum powers reserved to the People by this section are hereby fully reserved to the legal voters of every city, etc., etc. The manner of exercising said powers shall be prescribed by general laws, except that cities, towns and municipalities may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation."

It will be seen that this article of the Constitution contemplated legislative action providing a special proce-

dure in such cases. The legislature, chap. 97, Laws of 1913, enacted what appears to be a very complete and comprehensive method of procedure, supplementing the constitutional provision in this regard.

Section 3 of this act provides:

"Sec. 3. All petitions, so verified, shall be deemed and held sufficient if they appear to be signed by the requisite number of signers, and such signers shall be deemed and held to be qualified electors, unless a protest in writing under oath shall be filed in the office in which such petition has been filed, by some qualified elector, within fifteen days after such petition is filed, setting forth specifically the grounds of such protest and the names protested; whereupon the officer with whom such petition is filed shall forthwith mail a copy of such protest to the persons named in such petition as representing the signers thereof, at the addresses therein given, together with a notice fixing a time for hearing such protest, not less than five or more than twenty days after such notice is mailed. All records and hearings shall be public. Hearings shall be summary and must be concluded within forty days after such petition is filed, and the result thereof shall be forthwith certified to the persons representing the signers of such petition. In case the petition be declared insufficient in form or number of signatures of qualified electors, it may be withdrawn by a majority in number of the persons representing the signers of such petition, and may, within fifteen days thereafter, be amended or additional names signed thereto as in the first instance, and refiled as an original petition. The finding as to the sufficiency of any petition may be reviewed by any state court of general jurisdiction in the county in which such petition is filed, but such review shall be had and determined forthwith, and, upon application, the decision of such court thereupon shall be reviewed by the Supreme Court summarily."

The principal objections urged against the protest were, (a) that it was not under oath, and (b) that it did not specifically set forth the names protested, or the grounds of protest as required by the statute.

Inasmuch as we hold the first objection fatal to the protest, it is not necessary to consider the second.

The statute requires the protest to be in writing and under oath. The verification to the protest relied on, is as follows:

"State of Colorado, City and County of Denver, ss.

Martha A. Morrison, A. J. Cobb, J. W. Amesse, Bertha De Wolf, Margaret W. Henderson and Mabel I. Noble, each for himself (or herself), and not one for the other, deposes and says: That he (or she) subscribed his (or her) name to the above and foregoing protest after reading the same; that he (or she) knows the contents of said protest and the statements therein contained are true to the best of his (or her) knowledge, information and belief.

MARTHA A. MORRISON, D. O.,
ABNER J. COBB, D. C.,
BERTHA DE WOLF,
J. W. AMESSE, M. D.,
MARGARET W. HENDERSON,
MABEL I. NOBLE.

Subscribed to before me this 10th day of July, 1915. My notarial commission expires July 27, 1915.

MARY M. McCRUM,
Notary Public."

It will be seen that the certificate recites that the statement was subscribed to, but nowhere does it appear from such certificate that the signers were sworn.

It is the certificate of the officer from which it must be determined whether or not an oath was administered.

It is true that in the body of the statement the signers say that they "depose and say." But, if it be assumed that "to depose" means, "to swear," the certificate does not show that the signers even "deposed" before the officer. It recites only that they subscribed.

It was held in *Palmer v. McCarthy*, 2 Colo. App. 422, 31 Pac. 241, that:

"The assignor is also required to verify the inventory and list of creditors, under oath. The proceedings were, in this respect, fatally defective. The statute, as in all cases where such language is used, requires an affidavit subscribed by the party, and the certificate of an officer that an oath was administered—neither appears."

The Constitution and the Act of 1913, provide that to each referendum petition, shall be attached the affidavit of some qualified elector that each signature thereon is the signature of the person whose name it purports to be. The petition therefore, is required to be under oath, and it is but just that such a petition should be met with a protest likewise under oath, as the statute requires.

The legislature has treated both the petition and the protest as very serious matters, and has required that both shall be under oath. If the oath in the one case may be omitted, then it may also be omitted in the other, and there would remain no protection to the public from fraudulent referendum petitions. The statute provides a severe penalty in both cases.

The constitutional amendment authorized the legislature to adopt a special procedure in such case and the legislature has enacted a statute in apparent harmony with the constitutional provision. This statute declares that all petitions properly verified shall be deemed and held sufficient if they appear to be signed by the requisite number of signers, and that such signers shall be deemed and held to be qualified electors unless otherwise determined under the specific procedure provided.

The procedure requires also that a protest shall be filed with the Secretary of State within fifteen days from the date of the filing of the referendum petition.

It is further declared that such protest shall set forth specifically the grounds of such protest and the names protested. The further specific requirement is that such protest must be under oath.

These requirements are clearly jurisdictional, and the Secretary of State is without power to act in the absence of a substantial compliance with these requirements of the statute. We have held in this case, that the protest under consideration was vitally defective in one respect at least, in that it was not under oath. Therefore the proceedings of the Secretary of State upon and under such insufficient protest were without authority of law, and are without force or effect.

It is contended by counsel that section 3, at least, of the Act of 1913, is unconstitutional in that the protest is required to be filed within fifteen days from the date of the filing of the petition; that the time provided is so short as to render it physically impossible to comply with it, and therefore it is so unreasonable as to deny the right conferred by the Constitution.

The only matter we determine here is that the protest is invalid for the reason that such protest was not verified as required by the statute. Certainly it cannot be contended that the requirement that the protest must be under oath, is so unreasonable as to invalidate the statute. The requirement that the protest shall be filed within fifteen days from the date of the filing of the petition for the referendum, is not properly before us, for if the protest was void for the reason suggested, it cannot matter when it was filed.

Neither can the protestants be in any better position if the entire statute be held to be in violation of the Constitution. For aside from the statute in question, there

is no constitutional or other lawful authority for the filing
of a protest with the Secretary of State, and that officer
is without power or authority, except under the statute,
to hear or determine the questions attempted to be raised
by the protest.

The judgment is affirmed.                    *Affirmed.*

*En banc.*

GABBERT, C. J., GARRIGUES, J., WHITE, J., and BAILEY,
J., concur.

TELLER, J., and HILL, J., dissent.

Mr. JUSTICE TELLER, dissenting:

The majority opinion denies effect to the protest
filed with the Secretary of State on the ground that it was
not under oath; and holds that in the absence of a protest
in conformity with the statute the Secretary of State
could take no steps to determine the validity of the peti-
tion to refer the law.

I think the opinion is wrong in both these particu-
lars.  The statutory provision for a protest is in the
public interest, to prevent the incurring by the state of
the expense of submitting a law to a vote of the people
on a petition not meeting the requirements of that sec-
tion of the Constitution which provides for the referen-
dum; and, still more important, the protest is a safeguard
against the suspension of duly enacted laws, except upon
petition of qualified electors to the number prescribed
therefor by the constitution.  That being the case, the
statute should be liberally construed so as to promote its
purpose.

The record discloses no objection to the verification
during the several days of the hearing on the protest be-
fore the Secretary of State.  In the District Court, among

the grounds of a motion to dismiss is one that the protest was not under oath.

The record shows, Folio 117, that when the motion to dismiss was on hearing, counsel for the protestants stated that the notary who subscribed the jurat was in court, and that counsel wished to show by the notary that an oath was in fact administered. On objection by counsel for petitioners, the court denied the application, stating that he found the verification to be under oath.

The general rule is that affidavits may be amended both as to formal defects and as to substance; 1 Ency. Pl. & Pr. 336; and an affidavit defective for lack of a jurat may be reformed on a showing that it was made under oath. *Re Cussick's Appeal,* 136 Pa. St. 459, 20 Atl. 574, 10 L. R. A. 228.

The jurat is no part of the affidavit, simply an officer's entry, and can be amended *nunc pro tunc. Veal v. Perkerson,* 47 Ga. 92.

There is nothing peculiar about the affidavit required in such a case as this which should exempt it from the general rule. Not having objected on this ground before the Secretary of State, and having objected when the offer to amend the affidavit was made in the District Court, the petitioners should be held to have waived the objection.

Of course, if a verification in due form must be attached to the protest to give jurisdiction to hear the protest, as the majority opinion holds, the fact that the protestants made oath to the protest would avail nothing, and there could be no waiver. But I find nothing in the statute, nor in the nature of the proceeding, to justify that conclusion. The purpose of the requirement manifestly is to prevent reckless and baseless charges against a petition, and that purpose is subserved by the requirement of an oath, and not by the officer's certificate that the oath was administered.

In *Miller v. Caraker*, 9 Ga. App. 255, 71 S. E. 9, the court said:

"None of the American courts, so far as our investigation goes, has ever given great weight to mere form in these matters, and it is well recognized in this State that no particular form is required, provided the facts sworn to are committed to writing and signed by the affiant, if, as a matter of fact, the oath was administered. * * * The affidavit is, therefore, good provided (1) that there is a written statement; (2) that the oath is administered to the affiant; and (3) that he signs the statement."

The statement that an oath was taken cannot, then, be jurisdictional, and so to hold is to indulge in a strict construction of the statute, for which there is no good reason, and so defeat its plain purpose.

Moreover, if the law be fairly interpreted, the verification may be held sufficient, and it should be so held.

The verification contains the statement that each of the persons therein named "deposes and says," and counsel for protestants urge that the word "deposes" means to state under oath. The opinion ignores this contention, so far as any discussion of it is concerned, and determines the case on the ground that "the certificate does not show that the signers even deposed before the officer."

If "depose" in common usage means to state under oath, then the statement in the affidavit is equivalent to the usual form "being sworn says," or "under oath says." That it does so mean will appear from an examination of the authorities, and so meaning it is sufficient despite the supposed defect in the certificate.

As to the first of these propositions it is sufficient to say that it is supported by the definition of "depose" in all the leading lexicons.

One of the definitions of "depose" given in *Web-ster's New International Dictionary,* is "To say under oath, testify; esp'y to give witness of by an affidavit or other sworn statement in writing." . The *Century Dictionary* defines it as "To give testimony on oath, especially to give testimony which is embodied in writing in a deposition or an affidavit." The *Standard Dictionary,* *Worcester's Dictionary, Richardson's English Diction-ary, Anderson's Law Dictionary, Black's Law Diction-ary, Bouvier's Law Dictionary,* and *Cyc.,* all define the word "depose" in substantially the same way as mean-ing to state under oath, to give testimony by affidavit or deposition.

From the foregoing definitions it appears that the word "depose" used as it is in this case is sufficient to justify a conclusion that the statement was made under oath. Indeed, the derivation of the word naturally gives it that effect, it being from the Latin verb *depono,* to place, and meaning, as originally used, that the person named placed—*"deponit"*—his hands on the Bible, thus making his statement under oath. It does not, then, re-quire any strained construction of the language of the verification to hold it sufficient; and, in the light of the definitions above quoted, it is difficult to see how it can fairly be denied that from the entire instrument the state-ments in the verification appear to have been made under oath. If it can be so determined the matter of form is not material. And this is true whether the supposed de-fect be in the body of the affidavit or in the jurat.

In *Mitchell v. Surety Co.,* (D. C.), 206 Fed. 807, an affidavit was attacked because in the body of it there was no statement that the affiant was declaring under oath. On a full review of the authorities, the court held the af-fidavit good.

In *Corpus Juris,* vol. 2, p. 362, it is said: ⸗

"The jurat must show that the affidavit was sworn

to by affiant in the officer's presence. But a literal statement to this effect is usually not required if it appears from the entire instrument that the oath was taken.''

This authority supports also my second proposition, which is that the verification is not bad because the certificate of the officer does not definitely state that the signers ''deposed'' before him.

That such statement in the certificate is necessary is the basis of the majority opinion, yet no authority is cited to the point except the case of *Palmer v. McCarthy,* 2 Colo. App. 422, 31 Pac. 241; and this court has pointed out that it is not clear whether the affidavit was there held bad because the court concluded no oath had been administered, or because the certificate that the oath was administered by the deputy clerk was not in compliance with the statute. *Halbouer v. Cuenin,* 45 Colo. 509.

Such a holding is in direct conflict with the rulings of other courts.—*Cross v. People,* 10 Mich. 25; *In re Teachout,* 15 Mich. 346; *Black v. M. & St. L. Ry. Co.,* 122 Iowa 32, 96 N. W. 984; *Clement v. Bullens,* 159 Mass. 193, 34 N. E. 173; *Hosea v. State,* 47 Ind. 180.

In *Trice v. Jones,* 52 Miss. 138, it was held that an affidavit appearing by its language to have been made under oath, was good though the jurat contained only the recital: ''given under my hand and seal.''

In *Loeb v. Smith,* 78 Ga. 504, 3 S. E. 458, speaking of this question, the court said:

''It is not necessary that it should be stated in the instrument, prior to the signature of the affiant, that the declaration was made under oath, if in fact the oath was administered.''

In *Bickerdike v. Allen,* 157 Ill. 95, 41 N. E. 740, 29 L. R. A. 782, it is held that an affidavit containing an averment that it was made under oath is good, though the jurat contained only a statement that it was subscribed before the officer.

Applying these authorities to this case and it follows, since the word "depose" in the body of the verification means stating under oath, that it was not necessary for the notary to state specifically that it was made under oath, and hence the verification is sufficient.

I conclude, then, that, with abundant authority for holding the verification good, and in the face of the fact that the Secretary of State, upon a hearing lasting for several days, has found and announced that the petition was "insufficient in the number of signatures of qualified electors, as well as insufficient in form as regards residence addresses and other matters required by the law," this court, interpreting a provision of the statute plainly intended to prevent fraud in referendum petitions, and promote the public interest, has rejected a well known meaning of a word in the verification, and applied a strict rule of construction for which no authority is presented, and thus defeated the purpose of the law.

The further holding that the Secretary of State has no power to act independently of the statute is sustained neither by precedent nor on principle. The grounds for this holding are supposed to be found in the constitutional provision that a petition with the prescribed verification "shall be *prima facie* evidence that the signatures thereon are genuine and true and that the persons signing the same are qualified electors." This is to give to the words *"prima facie"* a new and startling effect. I had supposed that their meaning was well understood as being "on first appearance," or "first sight," following their literal meaning. In this connection they in no wise limit the power of the Secretary of State. On the contrary, this provision is clearly intended to relieve him of the duty of determining the genuineness of the signatures, etc.; and he is now authorized—not compelled —to accept a petition, and submit it, without any investigation as to the signatures. It is *prima facie* good, but

if the signatures are questioned their genuineness may be determined. *Prima facie* evidence of a fact is in law sufficient to establish the fact, unless rebutted. *Kelly v. Jackson,* 6 Pet. 622, 8 L. Ed. 523..

Is it to be supposed that the people in adopting this constitutional amendment intended to require the Secretary of State to submit every law upon which a referendum was sought by a petition with the requisite number of signers, regardless of his knowledge of the insufficiency of the petition? This constitutional amendment was adopted in November, 1910, and the legislation providing a procedure therefor was approved May 8, 1913. In the meantime the right of initiating and the right of referring laws had been several times exercised by the people. No objection could be made to the exercise of those rights at that time, because the amendment, by providing that general laws shall govern until a procedure should be provided by legislation, clearly recognized the right to file such petitions before any general procedure has been provided therefor. Yet, according to the majority opinion, until a procedure has been provided, the Secretary of State, and the people as well, were powerless to prevent the submission of any law, or all the laws enacted by the general assembly, if petitions for submission, good on their face, were filed, though their fraudulent character was well known.

By the statute of 1913, if any elector has doubts of the validity of any petition so filed he may, by filing a verified protest, have the validity of the petition determined; but, if the court is right in its conclusions, the Secretary of State, though he may have positive knowledge that the petition is honeycombed with fraud, can, of his own motion, make no investigation of the matter. Under oath to obey the laws and support the constitution, he must file a petition which he knows does not meet the

requirements of this section, and which is, therefore, no petition in the eye of the law.

To base such a conclusion on language which merely makes the submission of evidence of the validity of the petition unnecessary in the first instance would seem to require some argument for its support. Yet no reason is given for it.

It can hardly be seriously contended that the people intended by adopting this amendment to the Constitution to place the Secretary of State in such an anomalous position, as is above suggested, pending legislation on the question of procedure. Yet if the Secretary of State had any authority in the premises before the procedure was provided, it was derived from the Constitution, and the statute did not take it away.

He did have that right; he exercised it, and no one questioned his authority. On July 5, 1913, before the act of May 8, 1913, was in force, a petition to refer the act creating the County of Alamosa was filed in the office of the Secretary of State. He rejected it, and the petitioners then obtained from the District Court of the City and County of Denver an alternative writ of mandamus to compel him to submit it. Judge Perry, on a careful examination of the signatures, and a hearing on evidence, found that there were over sixteen hundred names on the petition which were fraudulent; that it could be seen by inspection that they had been written in groups, each group by the same person; and he sustained the Secretary of State in his rejection of the petition.

Again, when a petition for a reference of the act creating the Board of Public Utilities was filed in 1913,— no procedure having at that time been provided,—the People on the relation of the Attorney General applied to the District Court for an injunction, on the ground that the Secretary of State was about to submit the act on a petition not sufficient in law. On a hearing before Judge

Allen he found that many of the signatures were forged, and granted the injunction. According to the majority opinion those petitions, thus judicially determined to be fraudulent and invalid, should have been accepted and made the basis for suspending valid laws, and imposing on the state the expense attendant upon their submission to a vote of the people.

It may be confidently asserted that until the present case arose, the right of the Secretary of State to reject a petition, if he was satisfied of its invalidity, was unquestioned.

To deny him that right is to make the words *"prima facie"* equivalent to "conclusive," and to compel an officer of the state to aid in perpetrating a fraud upon the law with full knowledge of the fact.

The majority opinion rejects most obvious and seemingly necessary conclusions, and decides questions of the most serious import to the people without citing authority or giving reasons therefor.

The length of this opinion is justified, I trust, by the importance of the questions involved, and the depth of my conviction that they have not been rightly determined.

Decided July 3, A. D. 1916. Rehearing denied October 2, A. D. 1916.